UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARY H,,

                              Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

Case No. C18-5845 RBL

ORDER REVERSING AND
REMANDING DENIAL OF
BENEFITS

## I.      INTRODUCTION

This matter is before the Court on Plaintiff Mary H.'s Complaint (Dkt. 3) for review of

the Commissioner of Social Security's denial of her application for disability insurance benefits.

This is the second time this matter has been before the Court. *See* Admin. Record ("AR") (Dkt.

9) at 722-27.

Plaintiff last met the insured status requirements of the Social Security Act on December

31, 2006. *Id.* at 627. Through her date last insured, Plaintiff had severe impairments of "history

of cervical spine degenerative disc disease status post C7-T1 fusion surgery." *Id.* at 628.

Plaintiff also had the non-severe impairment of lupus. *Id.*

Plaintiff applied for disability benefits[1] on May 31, 2012, alleging a disability onset date of May 30, 2001. *See id.* at 167-71. Plaintiff's application was denied on initial review and on reconsideration. *Id.* at 82-88, 90-101. At Plaintiff's request, Administrative Law Judge ("ALJ") Riley Atkins held a hearing on Plaintiff's claims. *Id.* at 33-80. On May 13, 2014, ALJ Atkins issued a decision denying Plaintiff's claims for disability benefits. *Id.* at 17-25. The Appeals Council reviewed the decision and adopted ALJ Atkins's findings. *Id.* at 8-10. Plaintiff then sought review before this Court. *See id.* at 710-13.

On November 29, 2016, Magistrate Judge James Donohue issued a report and recommendation ("R&R") reversing and remanding ALJ Atkins's decision for further administrative proceedings. *Id.* at 731-41. The Commissioner had conceded error, but the parties disputed whether the matter should be remanded for an award of benefits or for further proceedings. *See id.* at 731-32. Magistrate Judge Donohue determined that there were evidentiary issues that needed to be resolved before a disability finding could be made, and thus remanded for further administrative proceedings. *Id.* at 738-40. District Judge Robert Lasnik subsequently entered an order adopting the R&R. *Id.* at 729-30.

On remand, ALJ Rudolph Murgo held a second hearing, at which he took testimony from impartial medical expert John Kwock, M.D., and vocational expert Richard Hincks. *Id.* at 653-80. ALJ Murgo issued a decision on July 2, 2018, in which he found that Plaintiff was not disabled prior to her date last insured of December 31, 2006. *Id.* at 625-36. ALJ Murgo thus denied Plaintiff's claim for disability insurance benefits. *Id.* at 636. The Appeals Council did not assume jurisdiction, so the ALJ's decision became the Commissioner's final decision. *See*

---

[1] Plaintiff also filed an application for supplemental security income benefits. *Id.* at 172-78. That application is not before the Court. *See id.* at 625.

20 C.F.R. § 404.984(d).

Plaintiff argues that the ALJ erred in (a) rejecting Plaintiff's testimony, (b) evaluating the medical evidence, and (c) rejecting the lay witness testimony of Jan Nardone. Pl. Op. Br. (Dkt. 11) at 1. Plaintiff argues that the Court should remand this matter for an award of benefits. *Id.*

## II.     DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**A.      The ALJ Harmfully Erred in Rejecting Plaintiff's Testimony**

Plaintiff contends that the ALJ erred in rejecting her subjective symptom testimony. Pl. Op. Br. at 15-17. Plaintiff testified that she injured her neck at work on May 30, 2001. AR at 45. She testified that she "had instant pain running down [her] shoulders and [her] arms started going numb." *Id.* She underwent surgery on her cervical spine on October 22, 2001, and again on March 13, 2002. *Id.* at 305-08. Plaintiff testified that her second surgery was successful "for about six weeks" and then she started losing the use of her right arm. *Id.* at 47. Almost three years later, on January 17, 2005, Plaintiff had a third surgery on her cervical spine. *Id.* at 302-04. Plaintiff testified that she had this surgery because her right arm was going numb and she was losing the use of her fingers. *Id.* at 49. Plaintiff had three more surgeries after her date last

1 insured, in 2008, 2010,[2] and 2012.  *See id.* at 383-86, 606-07, 1458.

2       The Ninth Circuit has "established a two-step analysis for determining the extent to

3 which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871 F.3d 664,

4 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective

5 medical evidence of an impairment that "'could reasonably be expected to produce the pain or

6 other symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir.

7 2014)).  At this stage, the claimant need only show that the impairment could reasonably have

8 caused some degree of the symptoms; she does not have to show that the impairment could

9 reasonably be expected to cause the severity of the symptoms alleged.  *Id.*  ALJ Murgo found

10 that Plaintiff met this step because her medically determinable impairments could reasonably be

11 expected to cause the symptoms she alleged.  AR at 629.

12       If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ

13 may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for

14 doing so.  This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678 (quoting

15 *Garrison*, 759 F.3d at 1014-15).  In evaluating the ALJ's determination at this step, the Court

16 may not substitute its judgment for that of the ALJ.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.

17 1989).  As long as the ALJ's decision is supported by substantial evidence, it should stand, even

18 if some of the ALJ's reasons for discrediting a claimant's testimony fail.  *See Tonapetyan v.*

19 *Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

20       ALJ Murgo found that Plaintiff's "statements concerning the intensity, persistence and

21 limiting effects of these symptoms are not entirely consistent with the medical evidence and

22

23      [2] The Administrative Record does not include the operative report from the 2010 surgery, but other records reference the date and general nature of the surgery. *See id.* at 1458.

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 4

other evidence in the record." AR at 629-30. ALJ Murgo reasoned that Plaintiff's statements were inconsistent with the overall medical evidence and contradicted by the lack of medical records from 2009-12, which the ALJ took to mean that Plaintiff did not receive treatment during that time. *Id.* at 629-31.

The ALJ's reasons do not withstand scrutiny. First, An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must do more than summarize the medical evidence. The ALJ must explain how the medical evidence contradicts the Plaintiff's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). ALJ Murgo summarized Plaintiff's treatment history during the alleged disability period, but did not address how the medical evidence contradicted Plaintiff's testimony. *See* AR at 630. Although the ALJ is entitled to rationally interpret the medical evidence, he must point to specific facts in the record supporting his interpretation and explain their relevance. *See Dodrill*, 12 F.3d at 918. ALJ Murgo did not do so.

Second, the lack of medical records from 2009-12, well after Plaintiff's date last insured, has no bearing on whether Plaintiff's symptom testimony was consistent with the evidence. Plaintiff clearly received treatment prior to her date last insured, as she had multiple neck surgeries. *See* AR at 302-08. She had another neck surgery in 2008, making her condition in 2009 and beyond less relevant to her condition from 2001-06. *See id.* at 606-07. Moreover, Plaintiff had neck surgery in 2010, belying the ALJ's determination that the lack of medical records from 2009-12 indicated a lack of treatment. *See id.* at 1458.

In sum, the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony. The Commissioner has given an interpretation of the medical and other

evidence that could support the ALJ's decision, but the Court is bound by the ALJ's actual decision, "not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Consequently, the ALJ harmfully erred in rejecting Plaintiff's symptom testimony.

**B.** **The ALJ Partially Erred in Evaluating the Medical Evidence**

Plaintiff contends that the ALJ erred in evaluating the medical evidence. Pl. Op. Br. at 4-13. Plaintiff challenges the ALJ's evaluation of the opinions of Darrell Brett, M.D., Robert Haight, M.D., John Kwock, M.D., and Howard Platter, M.D. *Id.*

**1.** **The ALJ Harmfully Erred in Rejecting Dr. Brett's Opinions**

Dr. Brett was Plaintiff's treating surgeon. *See* AR at 282-331, 389-401. Dr. Brett issued several opinions during the course of his treatment opining that Plaintiff "should not lift or carry more than 25 pounds or perform any repetitive and/or heavy exertion with the upper extremities or maintain any stationary or awkward neck position that aggravates discomfort." *Id.* at 329-31.[3]

The ALJ gave Dr. Brett's opinions "little weight." *Id.* at 633. He reasoned that Dr. Brett's opinions were (a) contradicted by the opinions of Dr. Kwock, who reviewed a more complete medical record, (b) inconsistent with the overall medical evidence, and (c) inconsistent with Plaintiff's "continued, albeit less than substantial gainful activity level earnings, during the relevant period." *Id.*

To reject the opinions of a treating doctor that are contradicted, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *See*

---

[3] On May 13, 2002, two months after Plaintiff's second neck surgery, Dr. Brett opined that Plaintiff was limited to lifting or carrying only ten pounds. *Id.* at 331.

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 6

*Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The

ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts

and conflicting clinical evidence, stating his interpretation thereof, and making findings."

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d

747, 751 (9th Cir. 1989)).

        The ALJ's first reason for rejecting Dr. Brett's opinions—that they were contradicted by

Dr. Kwock's opinions—fails. The fact that two medical opinions contradict one another is not a

reason to reject one; it simply indicates the standard applicable to the ALJ's reasoning. *See*

*Lester*, 81 F.3d at 830-31. Moreover, "'[t]he opinion of a nonexamining physician cannot by

itself constitute substantial evidence that justifies the rejection of the opinion of either an

examining physician or a treating physician.'" *Id.* at 831 (emphasis omitted).

        The ALJ's second reason for rejecting Dr. Brett's opinions—that they were inconsistent

with the overall medical evidence—is not a reasonable interpretation of the evidence. An ALJ

"cannot simply pick out a few isolated instances" of medical health that support his conclusion,

but must consider those instances in the broader context "with an understanding of the patient's

overall well-being and the nature of her symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th

Cir. 2016). ALJ Murgo justified his reasoning by stating that Dr. Brett's opinions "do not accord

with the last imaging during the relevant period showing only low grade degenerative changes,

unremarkable neurological examinations and evidence of no surgical complications." AR at 633.

But Plaintiff experienced documented symptoms throughout the relevant period and beyond.

*See, e.g.*, *id.* at 284-88, 292, 302-08, 340-69, 383-86, 606-07, 1458. And the fact that Plaintiff

had no surgical complications says nothing about the effectiveness of those surgeries. The

ALJ's analysis was not a reasonable interpretation of the evidence, and he thus erred in rejecting

1  Dr. Brett's opinions based on inconsistency with the medical evidence.

2  The ALJ's third reason for rejecting Dr. Brett's opinions—that they were inconsistent

3  with the fact that Plaintiff worked during the disability period—fails. ALJ Murgo acknowledged

4  that none of the work Plaintiff performed rose to the level of substantial gainful activity. *See id.*

5  at 627-28. Absent a more involved explanation, the fact that Plaintiff tried to work but could not

6  maintain employment did not contradict Dr. Brett's opinions that Plaintiff had work limitations.

7  *Cf. Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact

8  that a claimant tried to work for a short period of time and, because of his impairments, *failed*,

9  that he did not then experience pain and limitations severe enough to preclude him from

10 *maintaining* substantial gainful employment.") (emphasis in original).

11 The ALJ failed to provide any specific or legitimate reasons for rejecting Dr. Brett's

12 opinions. Accordingly, ALJ Murgo harmfully erred in rejecting Dr. Brett's opinions. *See Marsh*

13 *v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015).

14 **2.      The ALJ Did Not Harmfully Err in Rejecting Dr. Haight's Opinions**

15 Dr. Haight was one of Plaintiff's treating doctors. AR at 332-72. In a letter dated June 1,

16 2006, Dr. Haight opined that Plaintiff "is on permanent disability for chronic neck pain sustained

17 in a work-related injury. I have advised her not to work in any capacity to avoid exacerbation of

18 the pain and underlying spine injury." *Id.* at 347.

19 The ALJ gave Dr. Haight's opinions little weight. *Id.* at 633. ALJ Murgo gave the same

20 three reasons for discounting Dr. Haight's opinions as he gave for discounting Dr. Brett's

21 opinions. *See id.* The ALJ added that he rejected Dr. Haight's opinion because "determinations

22 as to vocational capacity and disability are reserved to the Commissioner." *Id.*

23 The ALJ's first three reasons for discounting Dr. Haight's opinions fail for the same

reasons they failed with respect to Dr. Brett's opinions. *See supra* Part II.B.1. The ALJ's fourth

reason—that Dr. Haight's opinion was ultimately a disability determination reserved to the

Commissioner—withstands scrutiny. Dr. Haight did not describe any specific limitations but

merely stated that Plaintiff should not do any work. *See* AR at 347. Dr. Haight is not a

vocational expert, and thus while he may have knowledge of the extent of Plaintiff's

impairments, he does not have the same level of insight as the ALJ into what possible jobs may

be available that Plaintiff could perform based on her impairments. ALJ Murgo therefore

reasonably rejected Dr. Haight's opinion because it made a determination reserved to the

Commissioner. *See McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011).

Although the ALJ included erroneous reasons for rejecting Dr. Haight's opinions, those

errors were ultimately harmless. An error is harmless "where it is 'inconsequential to the

ultimate disability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

(quoting *Carmickle*, 533 F.3d at 1162). The ALJ gave at least one valid reason for rejecting Dr.

Haight's opinion, and that reason remains valid despite the ALJ's other errors. ALJ Murgo's

inclusion of erroneous reasons was inconsequential to the outcome and therefore harmless.

**3.     The ALJ Harmfully Erred in Evaluating Dr. Kwock's Opinions**

Dr. Kwock was a consulting doctor who testified at the second hearing. *See* AR at 656-

67. He did not examine Plaintiff, but reviewed her medical records. *Id.* at 656. Dr. Kwock

opined that Plaintiff could perform light work, except that she could lift and carry up to 10

pounds frequently and 20 pounds occasionally; sit, stand, and walk for six hours in an eight-hour

work day; climb ladders and scaffolds occasionally; stoop occasionally; crouch frequently; never

crawl; and work at heights occasionally. *Id.* at 659-60.

The ALJ gave Dr. Kwock's opinions great weight. *Id.* at 632. The ALJ reasoned that Dr.

Kwock "reviewed the most complete and up-to-date medical record as well as all the prior opinion evidence," was "a board certified orthopedic surgeon," his opinion "comport[ed] with the overall medical evidence record," and "comport[ed] with [Plaintiff's] continued, albeit less than substantial gainful activity level earnings, during the relevant period." *Id.*

ALJ Murgo evaluated Dr. Kwock's opinions in comparison to Dr. Brett's opinions. *See id.* at 632-33. Because the Court has found that the ALJ erred in evaluating Dr. Brett's opinions, *see supra* Part II.B.1, that error taints the ALJ's analysis of Dr. Kwock's opinions. *Cf. Lester*, 81 F.3d at 830 ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). The ALJ must therefore reassess Dr. Kwock's opinions on remand.

### 4. The ALJ Harmfully Erred in Partially Rejecting Dr. Platter's Opinions

Dr. Platter reviewed Plaintiff's medical records as part of the Social Security Administration's reconsideration of Plaintiff's claims. AR at 97-99. Dr. Platter opined that Plaintiff had exertional, postural, manipulative, and environmental limitations. *Id.*

ALJ Murgo gave significant weight to Dr. Platter's opinions on Plaintiff's exertional and environmental restrictions, but little weight to Dr. Platter's opinions on Plaintiff's postural and reaching restrictions. *Id.* at 634. The ALJ again relied on the same reasons that he gave for rejecting Dr. Brett's opinions. *See id.* These reasons fail for the same reasons they failed with respect to Dr. Brett's opinions. *See supra* Part II.B.1. The ALJ accordingly harmfully erred in rejecting Dr. Platter's opinions on Plaintiff's postural and reaching restrictions.

### C. The ALJ Did Not Harmfully Err in Rejecting the Lay Witness Testimony

Plaintiff contends that the ALJ erred in rejecting the lay witness statement of Jan Nardone. Pl. Op. Br. at 17-18. Ms. Nardone submitted a statement dated March 27, 2014. AR

at 256.  She stated that she had known Plaintiff since 2004, and had hired Plaintiff to work in her

quilt store in 2007.  *Id.*  Ms. Nardone stated that Plaintiff had "a lot of difficulty with her hands

and arms and also standing in one place for very long."  *Id.*  She stated that Plaintiff had

difficulty with repetitive activity.  *Id.*

ALJ Murgo rejected Ms. Nardone's statement for several reasons.  First, the ALJ found

that Ms. Nardone's statement was "outside the relevant period of review in this case."  The ALJ

further explained:  "I also find recollections more than several years old, good intentions aside,

may be unreliable, especially when the objective medical evidence of record in 2007 reflects the

[Plaintiff] was recovered from her prior back surgeries."  *Id.* at 634.  Second, Plaintiff earned

only a small amount of money working for Ms. Nardone, "reflecting a very limited tenure" with

her.  *Id.*  Third, Ms. Nardone's statement was inconsistent with the overall medical evidence.  *Id.*

In determining disability, "'an ALJ must consider lay witness testimony concerning a

claimant's ability to work."  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout*

*v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).  The ALJ must "give reasons

germane to each witness" before he can reject such lay witness evidence.  *Molina*, 674 F.3d at

1111 (internal citations and quotation marks omitted).  "Further, the reasons 'germane to each

witness' must be specific."  *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

The ALJ did not err in rejecting Ms. Nardone's statement as outside the relevant period.

*See Spence v. Colvin*, 617 F. App'x 752, 754 (9th Cir. 2015).  Although Ms. Nardone stated that

she had known Plaintiff since 2004, she also stated that Plaintiff did not work for her until 2007.

AR at 256.  Ms. Nardone's statement discussed Plaintiff's impairments in the context of work,

and the ALJ reasonably concluded that this was only relevant to Plaintiff's condition after her

date last insured.  *See id.*

1    The ALJ similarly did not err in rejecting Ms. Nardone's statement because it was based

2    on a limited period of observation.  As the ALJ noted, Plaintiff only earned $785.00 working for

3    Ms. Nardone, and only in 2007.  *Id.* at 181, 634.  Plaintiff's argument that Ms. Nardone observed

4    her from 2004-07 is an alternate—and inaccurate—interpretation of the evidence.  *See id.*

5    The ALJ's final reason for rejecting Ms. Nardone's statement was erroneous, but

6    ultimately harmless.  *See Molina*, 674 F.3d at 1115.  ALJ Murgo's first two reasons remain valid

7    despite his inclusion of an erroneous third reason, so the error was inconsequential to the

8    outcome, and thus harmless.  *See id.*

9    **D.    Scope of Remand**

10    Plaintiff asks the Court to remand this matter for an award of benefits.  Pl. Op. Br. at 18.

11    Remand for an award of benefits "is a rare and prophylactic exception to the well-established

12    ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).  The Ninth

13    Circuit has established a three-step framework for deciding whether a case may be remanded for

14    an award of benefits.  *Id.* at 1045.  First, the Court must determine whether the ALJ has failed to

15    provide legally sufficient reasons for rejecting evidence.  *Id.* (citing *Garrison*, 759 F.3d at 1020).

16    Second, the Court must determine "whether the record has been fully developed, whether there

17    are outstanding issues that must be resolved before a determination of disability can be made,

18    and whether further administrative proceedings would be useful."  *Treichler v. Comm'r of Soc.*

19    *Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks

20    omitted).  If the first two steps are satisfied, the Court must determine whether, "if the

21    improperly discredited evidence were credited as true, the ALJ would be required to find the

22    claimant disabled on remand."  *Garrison*, 759 F.3d at 1020.  "Even if [the Court] reach[es] the

23    third step and credits [the improperly rejected evidence] as true, it is within the court's discretion

1  either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d

2  at 1045 (citing *Treichler*, 773 F.3d at 1101).

3      The first step of this framework has been met, as the ALJ erred in evaluating Plaintiff's

4  testimony, as well as the medical opinions of Dr. Brett, Dr. Kwock, and Dr. Platter. *See supra*

5  Parts II.A-B. The second step, however, has not been met. "In evaluating this issue, [the Court]

6  consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all

7  factual issues have been resolved, and whether the claimant's entitlement to benefits is clear

8  under the applicable legal rules." *Treichler*, 775 F.3d at 1103-04 (citing *Moisa v. Barnhart*, 367

9  F.3d 882, 887 (9th Cir. 2004)). In this case, there are numerous medical opinions suggesting

10  varying levels of impairment. *See, e.g.*, AR at 97-99, 329-31, 656-67. The Court is not in a

11  position to reweigh those opinions and determine whether they preclude Plaintiff from all jobs

12  existing in significant numbers in the national economy. And even if the Court fully accredited

13  Dr. Brett's opinion as the treating doctor over the other opinions, it is not definitively established

14  that Plaintiff would be precluded from work. Plaintiff's counsel attempted to question the

15  vocational expert at the second hearing as to whether Dr. Brett's restriction against maintaining

16  any stationary or awkward neck position that aggravates discomfort precluded employment. *See*

17  AR at 675-76. But the questions Plaintiff's counsel posed involved interpretation of the meaning

18  of Dr. Brett's opinion and how it translated to a quantifiable work restriction. *See id.* Those are

19  matters within the ALJ's exclusive purview. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d

20  996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.

21  2008). Further administrative proceedings are therefore necessary to determine Plaintiff's

22  disability status.

23      On remand, the ALJ must reevaluate Plaintiff's testimony, the opinions of Dr. Brett, Dr.

Kwock, and Dr. Platter, and conduct further proceedings as necessary to determine Plaintiff's disability status.

### III.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 20th day of May, 2019.


Ronald B. Leighton
United States District Judge